UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD F.K.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 3:20-cv-05614-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.    <u>ISSUES FOR REVIEW</u>

1. Did the ALJ Err at Step Two of the Sequential Evaluation Process?

II.    <u>BACKGROUND</u>

On September 22, 2017, Plaintiff filed an application for DIB, alleging therein a disability onset date of November 5, 2016, although he later amended this onset date to November 16, 2019. Administrative Record ("AR") 177, 180, 195. Plaintiff's application for DIB was denied upon official review and upon reconsideration. AR 108, 116. A hearing was held before ALJ Rebecca L. Jones on March 18, 2019. AR 30. On March

27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. AR 24. On April 21, 2020, the Social Security Appeals Council denied Plaintiff's request for review. AR 1–4.

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.   DISCUSSION

In this case, the ALJ found that Plaintiff had the medically determinable impairments of degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the right shoulder, obstructive sleep apnea, essential hypertension, gastroesophageal reflux disease, and asthma. AR 18. The ALJ did not find that Plaintiff had any severe, medically determinable impairment or combination of impairments that would significantly limit his ability to do work-related tasks and could be expected to last twelve or more months. AR 19.

Thus, the ALJ determined that Plaintiff was not disabled and did not proceed beyond step two of the five-step sequential evaluation process. AR 24. The ALJ reached this determination by giving little weight to Plaintiff' subjective symptom testimony and the opinions of consultative medical examiner Gary Gaffield, D.O., as well as non-examining medical consultants Charles Wolfe, M.D., and Guillermo Rubio, M.D. AR 20–24.

A.  <u>Whether the ALJ's Step Two Finding was Proper</u>

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. At step two of the sequential evaluation, the ALJ must determine if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520, § 416.920. A medically determinable impairment is one which results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3. A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c).

Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b); SSR 85-28, 1985 WL 56856, at *3.

The step two inquiry, however, is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the step two determination is a *de minimis* screening device used to

1 | dispose of groundless claims). "Ample authority cautions against a determination of
2 | nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655
3 | (9th Cir. 2011) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *Webb v. Barnhart*,
4 | 433 F.3d 683, 686 (9th Cir.2005), *Smolen*, 80 F.3d at 1290. An impairment or
5 | combination of impairments may be found "not severe only if the evidence establishes a
6 | slight abnormality that has no more than a minimal effect on an individual's ability to
7 | work." *Smolen*, 80 F.3d at 1290. "If an adjudicator is unable to determine clearly the
8 | effect of an impairment or combination of impairments on the individual's ability to do
9 | basic work activities, the sequential evaluation should not end with [step two.]" SSR 85-
10 | 28, 1985 WL 56856, at *4.

11 |     In *Webb v. Barnhart*, the Ninth Circuit articulated a test to determine whether an
12 | ALJ properly finds a claimant to be not disabled at step two. First, an ALJ must find the
13 | medical evidence of record "clearly establish[es]" a claimant did not have a medically
14 | severe impairment or combination of impairments. *Webb*, 433 F.3d at 686–87. Second,
15 | an ALJ must support this finding with substantial evidence. *Id.*

16 |     Here, Plaintiff submitted evidence establishing he had the medically determinable
17 | impairment of right shoulder degenerative joint disease since at least 2016. AR 428.
18 | Among the evidence Plaintiff submitted were the medical opinions of Gary Gaffield,
19 | D.O., and notes from Plaintiff's treating medical sources at Madigan Army Medical
20 | Center. *See, e.g.* AR 421–90, 498–506.

21 |     Dr. Gaffield reviewed Plaintiff's orthopedic treatment records and administered
22 | his own physical examination in addition to interviewing Plaintiff about his medical
23 | history, and based upon this evaluation, Dr. Gaffield diagnosed Plaintiff with

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1. Right shoulder weakness with marked restricted motion and history of a rotator cuff tear. It does not impact his grip or dexterity.

2. Mild restricted cervical motion with a history of underlying fractures. No radiculopathies.

3. Slight weakness of the right knee without restricted motion with a history of ACL tear.

4. Asthma by report. He carries medications.

5. Obstructive sleep apnea using a CPAP machine with good results.

AR 505.

Based on his assessment of these impairments, Dr. Gaffield opined that Plaintiff would be limited to lifting not more than 20 pounds occasionally and 10 pounds frequently, could perform postural activities occasionally, could not reach or work overhead for prolonged periods of time, and should avoid working at heights, operating heavy equipment, navigating scaffolding or irregular surfaces, or working around temperature extremes, gases, chemicals or fumes. AR 505–06. These reports were consistent with Plaintiff's subjective testimony as well as longitudinal history of his shoulder problems. *See, e.g.,* AR 50–51, 53, 56–58, 428, 499–500.

Although these reports were contradicted by other evidence upon which the ALJ relied, the conflict and ambiguity in the record demonstrates that Plaintiff's claim is at least debatable; thus, it has not been clearly established that Plaintiff's condition is non-severe. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005); *see Franklin v. Astrue*, 2012 WL 3059407, at *3 (W.D. Wash. 2012); *compare Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005) (finding claimant offered no objective medical evidence in support of claim that medically determinable impairments were severe).

The ALJ found Plaintiff's complaints regarding his shoulder to be inconsistent with findings that this impairment "is adequately treated with steroid injection and results in no significant limitation to [Plaintiff]'s ability to perform basic work activities." AR 21. As in *Webb*, this reason -- when balanced against the contemporaneous observations of Plaintiff's doctors, objective tests, and Plaintiff's subjective complaints – is not supported by substantial evidence.

The ALJ's summary of this evidence includes Plaintiff's reports that steroid injections provided some relief from his shoulder pain. However, the persistent shoulder impairment is well-documented through Plaintiff's testimony and objective medical evidence, including x-rays and physical exams. *See* AR 44–45 (Plaintiff needed a second person for a one-person lifting task), 50–51 (steroid injections do not last full three to four months, but provide "50 percent" pain relief in first month); 56 (Plaintiff testified that he could not lift more than 20 pounds at a time), 499 (x-ray showing "[m]ild acromioclavicular arthritis" in right shoulder). The evidence cited by the ALJ does not contradict Plaintiff's testimony. "That a person who suffers from severe [symptoms] makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

As for the medical evidence, the ALJ found that Dr. Gaffield's opinion on Plaintiff's limitations had no objective support. The ALJ did contrast Dr. Gaffield's findings to the absence of comparable findings by his medical providers. Tr. 23. But this overlooks the fact that Plaintiff's medical providers did not conduct examinations comparable to that provided by Dr. Gaffield. The ALJ also noted that Plaintiff

"consistently obtained significant relief from injections," Tr. 23. But the same records documenting relief also show that Plaintiff consistently needed injections in his shoulder for relief. Tr. 608 (noting shoulder pain was "long standing" as of June 2016); 609 (November 2017 injection); 607 (June 2018 injection); 601–02 (November 2018 injection); Tr. 600 (February 2019 injection).

In addition, both state agency physicians echoed most of Dr. Gaffield's recommendations. At the initial level, Dr. Charles Wolfe indicated that Plaintiff would be limited to light work, with limited push/pull in the upper and lower extremities; that he would be capable of only occasional postural activities, except for balancing (unlimited); that he would be limited in overhead work with his right upper extremity; and that he should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards. Tr. 89–91. Dr. Wolfe explained the factual basis of his findings, relying on the record as it stood, as well as Dr. Gaffield's exam. Tr. 86–87. At the reconsideration level, Dr. Guillermo Rubio concurred with Dr. Wolfe's opinion, relying on essentially the same evidence. Tr. 99, 101–03.

In any event, as in *Webb*, the issues the ALJ identified with Drs. Gaffield's, Rubio's, and Wolfe's opinions are not "sufficient to doom [Plaintiff's] claim as groundless under the de minimis standard of step two." *Webb*, 433 F.3d at 687. Drs. Gaffield's, Rubio's and Wolfe's reports are not only consistent with Plaintiff's complaints, but are also supported by objective medical evidence. *See* AR 82–93, 95–105, 499–505. This evidence is sufficient for Plaintiff to have met his burden to present evidence of a severe impairment. *See, e.g.*, *Webb*, 433 F.3d at 687; *Ortiz*, 425 Fed.Appx. at 655; *Franklin*, 2012 WL 3059407, at *3.

The ALJ lacked substantial evidence to find the record clearly established Plaintiff did not have a medically severe impairment. Thus, the ALJ committed harmful error by ending the sequential evaluation at step two.

2. Remand for Further Proceedings

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). On remand the ALJ must re-evaluate the medical opinion evidence, the Plaintiff's statements, and lay witness statements. *See supra* Section A. The lack of findings at steps three, four, and five of the sequential evaluation are outstanding issues requiring resolution before a disability determination can be properly made. Therefore, a remand for further proceedings is the appropriate remedy.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to: offer Plaintiff an opportunity for another hearing; further evaluate the medical opinions and obtain additional medical evidence if an expansion of the record would be useful; further evaluate Plaintiff's functional capacity, including ordering an examination if necessary; re-evaluate Plaintiff's testimony and subjective statements about symptoms; and if necessary, take vocational evidence to evaluate Plaintiff's residual functional capacity and resolve any apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles; and, if step five is reached,

make findings at step five as to whether Plaintiff may perform other jobs that exist in significant numbers in the national economy.

Dated this 8th day of November, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9